# EXHIBIT A

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                                   SUPERIOR COURT DIVISION
COUNTY OF BUNCOMBE         2015 MAR 24 P 3:49 15-CVS-

15CV 01243

THOMAS A. GALLO and I-MINERALS
USA, INC.,

         Plaintiffs,

         v.

UNIMIN CORPORATION, JOSEPH C.
SHAPIRO and RICHARD C. ZIELKE,

         Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Thomas A. Gallo and I-Minerals USA, Inc., claim relief from the Defendants as follows:

## THE PARTIES & JURISDICTION

1. Plaintiff Thomas A. Gallo ("Gallo") is a resident of Buncombe County, North Carolina.

2. Plaintiff I-Minerals USA, Inc. ("I-Minerals"), is an Idaho corporation with its principal place of business in Idaho.

3. Defendant Unimin Corporation ("Unimin") is a Delaware corporation headquartered in Connecticut and with substantial operations in Mitchell County, North Carolina.

4. Joseph C. Shapiro ("Shapiro") is, upon information and belief, a resident of Connecticut. The Court has personal jurisdiction over Shapiro pursuant to N.C. Gen. Stat. § 1-75.4 (1), (4) & (8).

1

5. Shapiro is, as Executive Vice President and Chief Operating Officer of Unimin, upon information and belief, engaged in substantial activities within North Carolina.

6. Upon information and belief, Shapiro has visited North Carolina as Executive Vice President and Chief Operating Officer of Unimin.

7. Upon information and belief, Shapiro previously visited North Carolina as Chief Legal Counsel of Unimin.

8. Shapiro, as Executive Vice President and Chief Operating Officer of Unimin, signed and verified the Complaint previously filed against Gallo and I-Minerals in the Superior Court for Mitchell County, North Carolina, Civil Action No. 14-CVS-141.

9. Shapiro is subject to personal jurisdiction in North Carolina pursuant to N.C. Gen. Stat. § 1-75.4(8) and N.C. Gen. Stat. § 55-15-05(b) as an officer of Unimin, a corporation authorized by the North Carolina Secretary of State to do business in North Carolina.

10. Richard C. Zielke ("Zielke") is, upon information and belief, a resident of Buncombe County, North Carolina.

11. The Court may properly assert jurisdiction over the parties to this action and the subject matter of the claims herein.

12. Venue is proper in Buncombe County, North Carolina, pursuant to N.C. Gen. Stat. § 1-82 in that Plaintiff Gallo, and upon information and belief, Defendant Zielke, reside in Buncombe County, North Carolina.

13. All conditions precedent to bringing this action have occurred, have been satisfied, or are waived.

## FACTS INCORPORATED IN ALL CLAIMS FOR RELIEF

14. Gallo earned a Ph.D. from Rutgers University in ceramic science and engineering in 1987.

15. Unimin mines and processes industrial minerals for sale, including high purity quartz.

16. Upon information and belief, Unimin sells high purity quartz, which is referred to in the market by Unimin as "Quintus grade," and ultra-high purity quartz, which is referred to in the market by Unimin as "Iota grade." "Quintus" and "Iota" are Unimin trademarks for its quartz products. Upon information and belief, Unimin dominates and has a monopolistic position in the marketplace in both high purity quartz and ultra-high purity quartz, controlling at least 70 percent of the market worldwide.

17. Ultra-high purity quartz is a critical component in the semiconductor industry, and high purity quartz is a critical component in the solar panel industry. Semiconductor chips are essential for technology in the modern world, including computers and phones. The semiconductor industry is dependent upon high purity quartz for production, and as a result ultra-high purity quartz has been called "Silicon Valley's secret recipe".

18. High purity quartz is also used in halogen- and xeon-based lighting, two types of lighting that are growing in market share as incandescent lamps decease in use. Therefore, high purity quartz is a high value and critical material.

19. Despite its critical importance, there are few competitors in the market for high purity quartz. There exist high barriers to entry in the high purity quartz market, such as acquiring suitable ore to process for production.

3

20. Due to its critical importance, demand for high purity quartz is not highly elastic. The only substitute for high purity quartz is synthetic quartz, which has a higher cost.

21. Unimin is a wholly owned subsidiary of a privately owned Belgium corporation, the global industrial minerals company SCR-Sibelco. Privately-owned companies are not subject to the reporting requirement of the U.S. or international stock exchanges. Privately-owned companies can also far more readily hide their monopolistic product market share positions and predatory behavior by hiding behind their private ownership status. In contrast, I-Minerals is a small publicly-owned company that must publicly report any material information pursuant to the Toronto Stock Exchange rules and requirements.

22. Upon information and belief, Unimin operates over 44 mines and processing facilities around the world. One of these mines for high purity quartz is located in Spruce Pine, North Carolina.

23. Upon information and belief, Unimin had gross revenue of approximately $1.6 billion dollars in 2013.

24. Unimin employed Gallo from 1997 through 2009.

25. When Unimin terminated Gallo's employment in 2009, he entered into a contract not to compete with Unimin for five years and not to disclose confidential information about Unimin's high purity quartz processing business and operations.

26. Under Connecticut law, which governed the contract, and under North Carolina law, noncompetition provisions must be of reasonable duration in order to be lawful and enforceable. For a noncompetition provision entered into in employment, a term of five years is at the outer limit of what Connecticut and North Carolina courts have enforced.

27. Connecticut and North Carolina law also require noncompetition provisions to be reasonably limited as to geographic scope and the activities restricted. The noncompetition provision between Unimin and Gallo stated that Gallo would "not directly or indirectly, manage, operate, control, participate in, accept employment or a consulting position with, or otherwise advise or assist or be connected with directly or indirectly own or have any interest in (except ownership of a less than one-half (1/2) of one percent (1%) of the outstanding shares of stock of a publicly traded company) or right with respect to any enterprise which engages in the business of mining, producing, processing, testing and/or selling High Purity Quartz anywhere in the world" for five years—from February 9, 2009 to February 9, 2014.

28. A noncompetition term of this scope, entered into in employment, is unlawful and invalid under the law of Connecticut and North Carolina.

29. Despite the extreme length and improper scope, Gallo abided by the restrictions on competition for the full five-year term, through February 9, 2014.

30. Gallo also abided at all times by the confidentiality provisions of the agreement.

31. Only after the unlawful and invalid noncompetition term expired did Gallo seek employment in the industrial quartz processing field, including by offering his general knowledge and skills in ceramics, chemistry, and in the manufacture of high purity quartz.

32. In June 2014, Gallo entered into a consulting contract with I-Minerals, a public company engaged in business as a startup operator of a multi-mineral mine in Idaho. Gallo's contract provided for him to advise I-Minerals on applications and markets for its sub-Iota grade quartz products and to earn a minimum of $12,000.00 per year, with more earnings possible if he did additional work.

33. I-Minerals announced Gallo's engagement openly, via press release, with Gallo's knowledge and consent. I-Minerals and Gallo assumed that by announcing the contract, it would likely come to the attention of Unimin.

34. Unimin did take notice of the press release because, upon information and belief, it has regularly monitored I-Minerals' efforts to become a competitor in the industrial quartz market since 2007, at least insofar as it is capable of offering quartz products of a purity that may be a viable substitute for Unimin products among certain high purity quartz consumers.

35. On July 28, 2014, without forewarning or advance communication whatsoever, Unimin sued Gallo and I-Minerals in the Superior Court of Mitchell County, North Carolina, Civil Action No. 14-CVS-141, in a nine-count Verified Complaint, purporting to allege claims for violation of the North Carolina Trade Secrets Protection Act, unfair and deceptive trade practices, breach of contract, tortious interference with contracts, conversion, unjust enrichment, and breach of the implied duties of good faith and fair dealing. All claims in Unimin's Verified Complaint were predicated on allegations that Gallo "misappropri[ated] and/or threatened misappropriation of Unimin's confidential, proprietary, and/or trade secret information." Unimin also sought temporary, preliminary, and permanent injunctive relief.

36. Unimin caused the Complaint to be verified under oath by its Vice President and Chief Operating Officer, Defendant Shapiro, who swore that the allegations were true of his own personal knowledge.

37. On information and belief, Shapiro had no personal knowledge of facts or a good faith basis sufficient to support the allegations of the Verified Complaint, and said allegations were not based upon facts known to him. In fact, Unimin and Shapiro had no knowledge of facts sufficient to support the causes of action in the Verified Complaint.

38. Defendant Zielke is the Vice President, Technical Sales, Research and Analytical Services for Unimin, based in Spruce Pine, North Carolina. He was Gallo's immediate superior during Gallo's entire employment by Unimin. Together with Shapiro and others not currently known, Zielke made the decision for Unimin to file suit against Gallo and I-Minerals.

39. The sole factual basis for Unimin to allege that Gallo and I-Minerals had misappropriated or threatened to misappropriate Unimin's trade secrets was the statement in the I-Minerals press release that Dr. Gallo was engaged "as a consultant to oversee ceramic test work and market development" and "with the addition of Thomas Gallo to our team we are better positioned to compete in the highly competitive quartz markets." This was the sole factual basis for all of the allegations in Unimin's Verified Complaint.

40. This single public statement furnished no reasonable basis to believe that Gallo or I-Minerals had or would misappropriate or disclose Unimin's trade secrets, had tortiously interfered with contracts, had converted property of Unimin, had unjustly enriched I-Minerals, or acted in bad faith or unfairly dealt with Unimin.

41. Neither Unimin, Shapiro nor Zielke undertook any factual investigation whatsoever other than reading I-Minerals' press release to determine whether there was any threat to its trade secrets. Rather, it was the Defendants' view – utterly wrong as a matter of law – that they were entitled to prevent Dr. Gallo from ever again using his general knowledge and skill in the high purity quartz industry anywhere in the world and from working with I-Minerals.

42. Through Zielke, Unimin was aware of Dr. Gallo's residence and had the means to contact him without any difficulty or inconvenience to inquire about his compliance with his obligations to preserve Unimin trade secrets or to warn of its intention to commence litigation, but Unimin did neither.

43. Likewise, Unimin had the means to contact I-Minerals without any difficulty or inconvenience to inquire about Unimin's trade secrets or its concerns about the press release and I-Minerals retaining Gallo as a consultant, but Unimin did not do so.

44. Following the filing of the Verified Complaint, and on the basis of Shapiro's false oath, the Court entered a temporary restraining order against Dr. Gallo and ordered the parties to complete expedited discovery.

45. In suing for misappropriation of its trade secrets, Unimin was obliged by applicable law to specify in its Verified Complaint the trade secrets it alleged were misappropriated or subject to a threat of misappropriation and to disclose in discovery specifics about its trade secrets.

46. However, Unimin did not specify in its Verified Complaint or its discovery responses any misappropriated or jeopardized trade secrets, referring instead to general and generic steps in mining and industrial minerals processing as constituting the trade secrets that Dr. Gallo was alleged to have disclosed or threatened to disclose to I-Minerals.

47. Unimin had no intention whatsoever to specify or disclose under seal, protective order, or otherwise any information about any of its actual trade secrets in the course of discovery in the litigation it commenced.

48. Unimin sought and received expedited discovery in its case, but then abused the expedited discovery process by seeking "[a]ll documents relating to I-Minerals, including without limitation, all Documents created by [Gallo] or exchanged between [Gallo] and I-Minerals in the course of [Gallo's] employment with I-Minerals related to quartz, feldspar, and/or mica" and "[a]ll Documents relating to the solicitation, recruitment, hiring, and/or

employment of [Gallo] . . . following the end of [Gallo's] employment with Unimin, related to industrial materials, including but limited to mica, feldspar, and quartz."

49. I-Minerals and Gallo conducted an exhaustive search of responsive documents and produced all responsive documents to Unimin, including highly confidential trade secret information.

50. The lawsuit further forced Gallo and I-Minerals into an expedited and very costly discovery process, involving three depositions across the country in three days.

51. After I-Minerals and Gallo turned over all of their documents, Unimin and Zielke refused to participate in the discovery process, and would not respond fully to I-Minerals' and Gallo's valid discovery requests.

52. This refusal to engage in the discovery process was in bad faith.

53. Following the completion of expedited discovery, the Court denied Unimin's motion for preliminary injunction and dissolved the temporary restraining order, noting that Unimin's claim for trade secret protection may not be well-founded.

54. Unimin appealed the denial of its motion for preliminary injunction.

55. Gallo filed a motion to dismiss Unimin's complaint pursuant to Rule 12(b)(6).

56. Before Gallo's motion to dismiss could be heard, Unimin withdrew its appeal and voluntarily dismissed its claims against Gallo and I-Minerals without prejudice.

57. Shapiro, as Executive Vice President and Chief Operating Officer of Unimin, actively and substantially participated in Unimin's sham lawsuit against Gallo and I-Minerals. Shapiro, with others, made the decision to file suit despite completing no factual investigation prior to the filing of the Complaint. Shapiro also reviewed and verified under oath the

Complaint against Gallo and I-Minerals, despite not having personal knowledge of the allegations or sufficient facts supporting the allegations contained in the Verified Complaint.

58. Zielke, as Vice President, Technical Sales, Research, and Analytical Services of Unimin, actively and substantially participated in Unimin's sham lawsuit against Gallo and I-Minerals. Zielke, with others, made the decision to file suit despite completing no factual investigation prior to the filing of the Verified Complaint. In contributing materially to that decision, Zielke acted with the purpose of preventing Gallo from employing his general skills and knowledge in manufacturing high-purity quartz, which was objectively unreasonable as a matter of law. Further, Zielke participated and acted in bad faith by refusing to produce responsive documents during the sham lawsuit.

## CLAIMS FOR RELIEF

## COUNT I – ABUSE OF PROCESS AS TO ALL DEFENDANTS

59. Gallo and I-Minerals restate and reallege Paragraphs 1 – 49 as if fully set forth herein.

60. Unimin, Shapiro and Zielke each had an ulterior motive or purpose when filing Unimin's lawsuit against Gallo and I-Minerals.

61. Under the guise of a lawsuit to protect Unimin's confidential, proprietary, and/or trade secret information, Unimin, Shapiro and Zielke were actually attempting to gain information and documents from Unimin's competitors (including I-Minerals), to interfere with the business relationships of Unimin's competitors (including I-Minerals), to stifle lawful market competition (especially from I-Minerals), and to prevent Dr. Gallo from plying his general skills and knowledge in manufacturing high purity quartz anywhere in the world.

62. During the course of Unimin's lawsuit against Gallo and I-Minerals, Unimin, by means of a false Verification by Shapiro, a factually insufficient Affidavit by Zielke and no pre-lawsuit investigation, abused the legal process by seeking a temporary restraining order, preliminary injunction and permanent injunction that prohibited Gallo from ever working with quartz in any manner, and for I-Minerals in particular.

63. Additionally, by seeking "[a]ll documents relating to I-Minerals, including without limitation, all Documents created by [Gallo] or exchanged between [Gallo] and I-Minerals in the course of [Gallo's] employment with I-Minerals related to quartz, feldspar, and/or mica" and "[a]ll Documents relating to the solicitation, recruitment, hiring, and/or employment of [Gallo] . . . following the end of [Gallo's] employment with Unimin, related to industrial materials, including but limited to mica, feldspar, and quartz," Unimin further abused the legal process by using discovery to gather for competitive reasons information and documents from Gallo, I-Minerals and other competitors in the industrial minerals industry.

64. Unimin further abused the legal process by offering to discontinue its lawsuit in exchange for Gallo voluntarily entering into an exceptionally broad permanent injunction that prohibited Gallo from ever working with quartz in any manner. Tacitly, the permanent injunction sought by Unimin would have enforced a permanent noncompete, contrary to the law of either Connecticut or North Carolina.

65. As a direct and proximate result of the actions of Unimin, Shapiro and Zielke, Gallo and I-Minerals have each suffered damages in excess of $25,000.00, including damages in the form of lost compensation, impairment to reputation and business and employment prospects, harassment, and incurring unnecessary legal fees and expenses in defending Unimin's litigation, which each is entitled to recover against Unimin, Shapiro and Zielke, jointly and severally.

11

66. Furthermore, Unimin, Shapiro and Zielke's abuse of the legal process, in disregard of Gallo's and I-Mineral's rights, was deliberate, willful and malicious, entitling Gallo and I-Minerals to an award of punitive damages against each Defendant, jointly and severally.

## COUNT II – MALICIOUS PROSECUTION
## AS TO ALL DEFENDANTS

67. Gallo and I-Minerals restate and reallege Paragraphs 1 – 57 as if fully set forth herein.

68. On July 28, 2014, Unimin commenced a lawsuit against Gallo and I-Minerals in the Superior Court for Mitchell County, North Carolina, Civil Action No. 14-CVS-141. Said lawsuit was supported by a false Verification by Shapiro and a factually insufficient Affidavit by Zielke.

69. There was a lack of probable cause for said lawsuit because there was no factual foundation supporting the lawsuit. Unimin, Shapiro and Zielke commenced the lawsuit without any reasonable factual inquiry, basing it upon Shapiro's false Verification and Zielke's factually insufficient Affidavit. The purpose of the lawsuit was to gain information and documents from Unimin's competitors (including I-Minerals), to interfere with the business relationships of Unimin's competitors (including I-Minerals), to stifle lawful market competition (especially from I-Minerals), and to prevent Dr. Gallo from plying his general skills and knowledge in manufacturing high purity quartz anywhere in the world.

70. The lawsuit against Gallo and I-Minerals was maliciously instituted by Unimin, Shapiro and Zielke with reckless and wanton disregard of Gallo's and I-Mineral's rights and with ill-will and spite towards Gallo for his decision to work for one of Unimin's competitors, namely

12

I-Minerals, and towards I-Minerals for attempting to compete with Defendants in the marketplace.

71. Unimin's lawsuit, bearing Civil Action No. 14-CVS-141, terminated in favor of Gallo and I-Minerals by the filing of a notice of voluntary dismissal without prejudice on December 2, 2014.

72. As a direct and proximate result of Unimin, Shapiro and Zielke's actions, Gallo and I-Minerals have suffered and continue to suffer damages and special damages in excess of $25,000.00. In particular, Gallo was restrained by the Court in a way that prevented him from plying his general skills and knowledge, and Unimin, Shapiro and Zielke's wrongful conduct has caused and continues to cause substantial inference with Gallo's ability to find employment or otherwise work in the industrial materials industry. During the Temporary Restraining Order and lawsuit, I-Minerals was not able to work with Gallo while under the gun of litigation. Gallo and I-Minerals are entitled to recover their actual damages against Unimin, Shapiro and Zielke, jointly and severally.

73. Unimin, Shapiro and Zielke's malicious prosecution, in disregard of Gallo's and I-Minerals' rights, was deliberate, willful and malicious, entitling Gallo and I-Minerals to an award of punitive damages against each Defendant, jointly and severally.

## COUNT III – UNFAIR AND DECEPTIVE TRADE PRACTICES (N.C. GEN. STAT. § 75-1.1) AS TO ALL DEFENDANTS

74. Gallo and I-Minerals restate and reallege Paragraphs 1 – 64 as if fully set forth herein.

75. Unimin, Shapiro and Zielke engaged in unlawful and unfair acts and/or business practices without privilege, justification or excuse by commencing a sham lawsuit to gain information and documents from Unimin's competitors (including I-Minerals), to interfere with the business relationships of Unimin's competitors (including I-Minerals), to stifle lawful market competition (especially from I-Minerals), and to prevent Dr. Gallo from plying his general skills and knowledge in manufacturing high purity quartz anywhere in the world.

76. The claims asserted by Unimin in its prior lawsuit against Dr. Gallo and I-Minerals were not objectively reasonable, and were, in fact, objectively meritless and utterly baseless in that Unimin, Shapiro and Zielke could not realistically expect success on the merits. Unimin, Shapiro and Zielke conducted no pre-filing investigation, filed suit based upon a false Verification, had no evidence that Gallo misappropriated confidential, proprietary, and/or trade secret information, would not and could not identify one single piece of information Dr. Gallo allegedly misappropriated, and had no intention whatsoever to specify or disclose in the course of discovery in the prior lawsuit any information about any actual trade secret they claimed was compromised. In addition, Unimin had no evidence or a good faith belief that Gallo or I-Minerals had tortiously interfered with a contract of Unimin, had been unjustly enriched, or had converted any of Unimin's property. Indeed, at the time of Unimin's filing, I-Minerals had neither a quartz product for sale nor a plant to process quartz.

77. Unimin, Shapiro and Zielke's subjective motivation for filing suit was an unlawful and anticompetitive intent to interfere directly with the business of Unimin's competitor, I-Minerals, to gain information and documents from Unimin's competitors (including I-Minerals), to interfere with the business relationships of Unimin's competitors (including I-Minerals), to stifle lawful market competition (especially from I-Minerals), and to

prevent Dr. Gallo from plying his general skills and knowledge in manufacturing high purity quartz anywhere in the world.

78. These unlawful and unfair acts and/or business practices by Unimin, Shapiro and Zielke were undertaken in direct competition with Gallo, I-Minerals and other competitors in the industrial minerals industry and constitute unfair methods of competition and/or unfair acts or practices in violation of Section 75-1.1 of the North Carolina General Statutes (N.C. Gen. Stat. § 75-1.1).

79. The unfair methods of competition and/or unfair acts or practices undertaken by Unimin, Shapiro and Zielke were business activities in and affecting commerce as defined by Section 75-1.1(b) of the North Carolina General Statutes.

80. As a direct and proximate result of the unfair methods of competition and/or unfair acts or practices undertaken by Unimin, Shapiro and Zielke, Gallo and I-Minerals have sustained and continue to sustain damages in excess of $25,000.00, which Gallo and I-Minerals are entitled to recover against each Defendant, jointly and severally.

81. The unfair methods of competition and/or unfair acts or practices undertaken by Unimin, Shapiro and Zielke, in disregard of Gallo's and I-Mineral's rights, were deliberate, willful, and malicious, entitling Gallo and I-Minerals to an award of punitive damages against each Defendant, jointly and severally.

**WHEREFORE,** Gallo and I-Minerals each claim relief from the Defendants, Unimin Corporation, Joseph C. Shapiro and Richard C. Zielke, for:

   a) compensatory damages in an amount to be determined at trial;

   b) treble damages pursuant to N.C. Gen. Stat. § 75-16;

   c) punitive damages pursuant to N.C. Gen. Stat. § 1D-15;

Respectfully submitted this the _____ day of March, 2015.

_____
J. Daniel Bishop (N.C. State Bar No. 17333)
Scott A. Hefner (N.C. State Bar No. 38226)
**ERWIN, BISHOP, CAPITANO & MOSS, P.A.**
4521 Sharon Road, Suite 350
Charlotte, North Carolina 28211
Telephone: (704) 716-1200
Fax: (704) 716-1201
E-mail: Dbishop@EBCMLAW.com
E-mail: Shefner@EBCMLAW.com
*Attorneys for Plaintiff Thomas Gallo*

_____
Larry McDevitt (N.C. State Bar No. 5032)
David M. Wilkerson (N.C. State Bar No. 35742)
Heather Whitaker Goldstein (N.C. State Bar No. 26194)
**THE VAN WINKLE LAW FIRM**
P.O. Box 7376
Asheville, NC 28802-7376
Telephone: (828) -258-2991
Fax: (828) 257-2767
E-mail: lmcdevitt@vwlawfirm.com
E-mail: dwilkerson@vwlawfirm.com
E-mail: hgoldstein@vwlawfirm.com
*Attorneys for Plaintiff I-Minerals USA, Inc.*