UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00094-MOC-DLH

| | |
|---|---|
| **I-MINERALS USA, INC. and THOMAS A. GALLO,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> Vs. ) <br> ) <br> **RICHARD C. ZIELKE, JOSEPH C. SHAPIRO,** ) <br> **and UNIMIN CORPORATION,** ) <br> ) <br> Defendants. ) | **ORDER** |

**THIS MATTER** is before the court on "Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" (#12). By their motion, Defendants Unimin Corporation ("Unimin"), Joseph C. Shapiro ("Shapiro"), and Richard C. Zielke ("Zielke") (collectively, "Defendants") move the court to dismiss all claims alleged in Thomas A. Gallo's ("Gallo") and I-Minerals USA, Inc.'s ("I-Minerals") (collectively, "Plaintiffs") Amended Complaint for failure to state a plausible claim upon which relief can be granted. Having been fully briefed, this matter is ripe for review.

### I. BACKGROUND

Plaintiffs filed this case in March 24, 2015 in the North Carolina General Court of Justice, Superior Court Division, Buncombe County, North Carolina. Defendants removed this matter to this court on May 13, 2015. The Amended Complaint in this matter generally asserts the following facts.

Plaintiff Gallo is a former employee of Defendant Unimin, a company in the business of producing high purity quartz for use in high-technology industries. Gallo worked for Unimin from 1997 to 2009 and left his position as a research scientist with the company over five years prior to the commencement of this lawsuit. Upon leaving his position with Unimin, Gallo signed a five-year non-compete agreement with Unimin and agreed not to disclose any confidential information belonging to Unimin. Following the expiration of the five-year period, on June 1, 2014 Gallo entered into a consulting contract with I-Minerals, an Idaho corporation engaged in business as a startup operator of a multi-mineral mine in Idaho. By their contract, I-Minerals agreed to pay Gallo a minimum of $12,000 per year, with more earnings possible if Gallo did additional work. At some point shortly after Gallo began working for I-Minerals, I-Minerals issued a press release announcing the new employment engagement.

On July 28, 2014, apparently without any communication or forewarning, Unimin sued Gallo and I-Minerals in Superior Court of Mitchell County, North Carolina, alleging generally that Gallo had misappropriated and/or threatened to misappropriate Unimin's trade secrets and other confidential and proprietary information. Unimin brought claims in that case, (hereinafter, the "Superior Court Action"), for violation of the North Carolina Trade Secrets Protection Act, unfair and deceptive trade practices, breach of contract, tortious interference with contracts, conversion, unjust enrichment, and breach of the implied duties of good faith and fair dealing. Unimin also sought injunctive relief. Soon after the filing of the complaint, the Superior Court entered a temporary restraining order ("TRO") against Gallo and ordered the parties to conduct discovery. After expedited discovery in that case, the court in the Superior Court Action denied

Unimin's motion for a preliminary injunction, dissolved the TRO, and Unimin thereafter voluntarily dismissed its lawsuit without prejudice.

By the complaint in the instant case, Plaintiffs allege that Defendants' conduct in relation to the Superior Court Action constituted a sham lawsuit, abuse of process, and malicious prosecution. Plaintiffs allege that Defendants used that lawsuit to gain information and documents from its competitor I-Minerals in order to interfere with I-Minerals' business relationships, and to prevent Gallo from using his skills and extensive knowledge of high purity quartz for the benefit of another company. Plaintiffs allege that Defendants abused the discovery process by seeking all documents related to I-Minerals' and Gallo's communications regarding minerals, the recruitment and hiring of Gallo, and confidential trade secrets, but then refused to respond to any of I-Minerals' and Gallo's document requests in return. By the instant action, Plaintiffs have named Unimin, its Executive Vice President and Chief Operating Officer Shapiro, and Vice President Zielke as Defendants. Plaintiffs have brought three claims as to all Defendants: 1) abuse of process; 2) malicious prosecution; 3) and unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. Defendants maintain that they initiated the Superior Court Action in good faith to prevent or remedy the unlawful disclosure of its confidential, proprietary, and trade secret information. They seek to dismiss all of these claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs have failed to state claims upon which relief can be granted.

## II. ANALYSIS

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a claimant must allege facts in his

complaint that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotations and citation omitted). A claimant must plead sufficient facts to state a claim for relief that is "plausible on its face." Id. at 570 (emphasis added). As the Court elaborated in Ashcroft v. Iqbal, 556 U.S. 662 (2009), "[a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability ...." Id. (citation omitted). While the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." 556 U.S. at 679. While a plaintiff is not

required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level…" Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.

**B. Plaintiff's Claims**

Defendants assert the following central arguments in their 12(b)(6) motion:

1. Plaintiffs' abuse of process, malicious prosecution, and unfair and deceptive trade practices claims are barred by the Noerr-Pennington Doctrine, which bars liability when the underlying claim is not objectively baseless;
2. Plaintiffs' abuse of process claim, if not dismissed under the Noerr-Pennington Doctrine, should be dismissed because the alleged abusive acts were conducted within the regular conduct of the lawsuit for a legitimate purpose; and
3. Plaintiffs' malicious prosecution claim, if not dismissed under the Noerr-Pennington Doctrine, should be dismissed because Plaintiffs did not incur special damages and Defendants acted with probable cause.

See Def. Mem. (#13) at p. 2. The court will address each argument in turn.

*1. Applicability of the Noerr-Pennington Doctrine*

The court first addresses Defendants' central argument that Plaintiffs' claims are all barred by the Noerr-Pennington Doctrine, which "guarantees citizens their First Amendment right to petition the government for redress without fear of antitrust liability." Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 398 (4th Cir. 2001). This doctrine emerged from two Supreme Court cases, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of Am. v. Pennington, 381 U.S. 657, 669, both decided in the context of federal anti-trust law. Developing case law has extended the doctrine to litigation, including that involving business torts. See IGEN Int'l, Inc. v. Roche Diagnostics

GmbH, 335 F.3d 303, 310 (4th Cir. 2003). "The application of Noerr-Pennington is a question of law." Id.

The Supreme Court held in Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993), however, that a party may be held liable for bringing a "sham" lawsuit against a competitor, which is a lawsuit "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Id. at 60. The Court further clarified that "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation …. [and, in doing so] focus on whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor.'" Id. at 60-61 (quoting Noerr, 365 U.S. at 144). Thus, "a plaintiff may not be held liable for bringing an objectively reasonable lawsuit, regardless of the plaintiff's subjective intent in initiating the litigation." GoldToeMoretz, LLC v. Implus Footcare, LLC, No. 5:09-CV-0072, 2010 WL 3474792, at *3 (W.D.N.C. Aug. 31, 2010). A lawsuit is objectively reasonable if "an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome." Professional Real Estate Investors, 508 U.S. at 60. "[E]ven litigation that is deceitful, underhanded, or morally wrong will not defeat immunity unless it satisfies the objective baselessness requirement." IGEN Int'l., 335 F.3d at 312 (citing Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 398–99 (4th Cir. 2001)).

Here, Plaintiffs have alleged facts in their complaint tending to show that the Superior Court Action was objectively baseless and otherwise constitutes a sham lawsuit. For example, Plaintiffs argue that Unimin filed suit based solely on I-Minerals' public statement that Dr. Gallo was engaged "as a consultant to oversee ceramic test work and market development" and "with the

addition of Thomas Gallo to our team we are better positioned to compete in the highly competitive quartz markets." (Amended Compl. ¶¶ 39, 57, 58). Plaintiffs further argue that none of the Defendants conducted any factual investigation before filing suit, (Amended Compl. ¶ 41), and none of them attempted to contact Dr. Gallo or I-Minerals to verify any allegation of the Superior Court Action complaint or confirm that Dr. Gallo intended to comply with his Confidentiality Agreement. They contend that Defendants failed to explore in any way the scope of Dr. Gallo's work for I-Minerals or attempt to determine whether such work might violate the confidentiality agreement. Finally, Plaintiffs note that none of the Defendants sent warning of Unimin's intent to commence litigation, (Amended Compl. ¶¶ 41, 42), or attempted to confirm whether I-Minerals actually had a plant to process quartz or any quartz product for sale before alleging that I-Minerals had been unjustly enriched by its conversion of Unimin's trade secrets. (Amended Compl. ¶ 76). The court finds that if ultimately credited by a finder of fact in this case, these pleadings sufficiently state a claim that Defendants abused their right to petition the courts beyond the point of constitutional protection, and that the sham litigation exception to the Noerr-Pennington doctrine may apply. See Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354, 356-57 (4th Cir. 2013).

The court also finds that dismissing this matter based on the Noerr-Pennington doctrine, an affirmative defense, is inappropriate given the pleadings in this case. To the extent that Defendants argue that application of the Noerr-Pennington doctrine is not an affirmative defense, such argument has been squarely foreclosed by the Fourth Circuit. In Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354 (4th Cir. 2013), the Fourth Circuit examined, inter alia, the applicability of the Noerr-Pennington doctrine at the 12(b)(6)

stage, and clearly stated, "[w]hile we have since questioned our decision to do so, we have held that the Noerr-Penington doctrine is an affirmative defense." Id. at 359-60. See also id. at n. 5 (noting that despite dicta, the Circuit "remain[s] bound by [their] earlier precedent that the Noerr–Pennington doctrine is an affirmative defense") (citing McMellon v. United States, 387 F.3d 329, 333 (4th Cir. 2004)). Generally, in ruling on a Rule 12(b)(6), the "court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 448 (4th Cir. 2011) (citing Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)). "[W]hen 'matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56,' and '[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'" Waugh Chapel, 728 F.3d at 360 (quoting Fed.R.Civ.P. 12(d)). However, as relevant to an affirmative defense such as the Noerr-Pennington doctrine, a 12(b)(6) motion, "which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense," except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Thus, Rule 12(b)(6) motion based solely on an affirmative defense may be considered only if "all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" Waugh Chapel, 728 F.3d at 360 (quoting Goodman, 494 F.3d at 464 (emphasis in original)). Furthermore, the Circuit noted in Waugh Chapel that "incorporation by reference is [not always] appropriate ... [n]or should 'judicial notice' be used as an expedient for courts to consider 'matters beyond the pleadings' and thereby

upset the procedural rights of litigants to present evidence on disputed matters." Waugh Chapel, 728 F.3d at 360 (citing, inter alia, Goodman, 494 F.3d at 464).

Here, while the allegations in the face of the Amended Complaint plausibly support a finding that the Defendants brought an objectively unreasonable lawsuit, they are insufficient to determine the merits of the Noerr-Pennington affirmative defense. As noted in Waugh Chapel, mere reference to the alleged sham lawsuit on the face of the complaint does not determine whether the Noerr-Pennington doctrine bars Plaintiffs' claims as a matter of law. See Waugh Chapel at 360. The court therefore finds that dismissal based on the assertion of the Noerr-Pennington affirmative defense inappropriate at this stage in the proceedings.

### 2. *Malicious Prosecution*

A claim for malicious prosecution under North Carolina law requires allegations that "the defendant initiated the earlier proceeding, that he did so maliciously and without probable cause, and that the earlier proceeding terminated in the plaintiff's favor." Raymond U v. Duke Univ., 371 S.E.2d 701, 706 (N.C. Ct. App. 1988) (citing Stanback v. Stanback, 254 S.E.2d 611 (N.C. 1979)). Additionally, the plaintiff must prove special damages. Id. Defendants argue that Plaintiffs' malicious prosecution claim should be dismissed because they acted with probable cause in the Superior Court Action and Plaintiffs did not incur special damages.

#### a. *Probable Cause*

"The standard for determining whether probable cause existed at the time an action was begun is one of reasonableness. If a reasonable person would have believed and acted under the circumstances as the defendant did, there is probable cause." Raymond, 371 S.E.2d at 706 (internal citation omitted). Here, Plaintiffs have set forth several facts that call into question

whether a reasonable person would have believed that probable cause existed to file the Superior Court Action. The complaint alleges that the Defendants in this case filed suit and asserted nine counts against Plaintiffs alleging various types of misconduct relating to trade secrets based on a few sentences in a press release. The complaint alleges that Defendants conducted no factual research whatsoever relating to Gallo's employment with I-Minerals before commencing the Superior Court Action. While Gallo has certainly not proven that no probable cause existed for the Superior Court Action, the court finds that the factual allegations in the complaint "raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, and that dismissing the count on this basis would be inappropriate.

      *b. Special Damages*

Regarding special damages, "[i]n civil actions, the plaintiff must show that there was some arrest of his person, seizure of his property, or some other special damage resulting from the action such as would not necessarily result in all similar cases." Alexander v. Alexander, 567 S.E.2d 211, 213 (N.C. Ct. App. 2002). "The gist of such special damage is a substantial interference either with the plaintiff's person or his property…" Id. (citing Stanback 254 S.E.2d at 625). Here, Plaintiffs have alleged damages from malicious prosecution in that "Gallo and I-Minerals have suffered and continue to suffer damages and special damages in excess of $25,000. In particular, Gallo was restrained by the Court in a way that prevented him from plying his general skills and knowledge, and [Unimin, Shapiro, and Zielke's] wrongful conduct has caused and continues to cause substantial interference with Gallo's ability to find employment or otherwise work in the industrial materials industry. During the Temporary Restraining Order and lawsuit, I-Minerals was not able to work with Gallo while under the gun

of litigation." (Amen. Compl. ¶ 72). The North Carolina Supreme Court specifically noted in Stanback, when examining the requirement of special damages in a malicious prosecution claim, that "[h]ad [the plaintiff] alleged the issuance of a temporary restraining order or something of like nature, the complaint would clearly have been sufficient." Id. at 626. Here, Plaintiffs have alleged that the TRO prevented Gallo from using his general skills and knowledge during the pendency of the Superior Court Action from working with I-Minerals, and that it additionally caused Gallo to have difficulty obtaining other employment in the metals industry. (Amen. Compl. ¶ 72). The complaint also alleges that the TRO interfered with the contract rights between I-Minerals and Gallo, and that the lawsuit generally required I-Minerals to hand over proprietary and trade secret information. Thus, the court finds that both Plaintiffs have properly pled special damages.

### 3. *Abuse of Process*

The court notes out the outset that "[t]he distinction between an action for malicious prosecution and one for abuse of process is that malicious prosecution is based upon malice in causing the process to issue, while abuse of process lies for its improper use after it has been issued." Chidnese v. Chidnese, 708 S.E.2d 725, 731 (N.C. Ct. App. 2011) (quoting Barnette v. Woody, 88 S.E.2d 223, 227 (N.C. 1955)). "Abuse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process <u>after issuance</u> to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtained under it is attended (sic) to be secured." Turner v. Thomas, 762 S.E.2d 252, 261 (N.C. Ct. App. 2014) (internal quotations and citations omitted) (emphasis in original).

To state a claim for abuse of process, the plaintiff must allege: "(1) a prior proceeding was initiated against the plaintiff by the defendant or used by him to achieve an ulterior motive or purpose; and (2) once the proceeding was initiated, the defendant committed some willful act not proper in the regular prosecution of the proceeding." Semones v. S. Bell Tel. & Tel. Co., 416 S.E.2d 909, 913 (N.C. Ct. App. 1992) (citing Stanback v. Stanback, 254 S.E.2d 611, 624 (N.C. 1979)). An abuse of process claim therefore cannot stand where the alleged abuse "is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." Thompson v. Blessed Home Inc., 22 F. Supp. 3d 542, 545 (E.D.N.C. 2014) (citation omitted). The alleged willful act must occur after the filing of the lawsuit. See Basic Med. Care Plus, Inc. v. N. Carolina Mut. Life Ins. Co., No. 1:03CV00269, 2005 WL 2205016, at *12 (M.D.N.C. Sept. 6, 2005). Furthermore,

> The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by defendant or used by him to achieve a collateral purpose not within the normal scope of the process used. The act requirement is satisfied when the plaintiff alleges that once the prior proceedings [were] initiated, the defendant committed some willful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter.

Chidnese v. Chidnese, 708 S.E.2d 725, 734-35 (N.C. Ct. App. 2011) (quoting Stanback, 254 S.E.2d at 625) (emphasis added). See also Fordyce v. Ocwen Loan Servicing, LLC, No. 1:14-CV-00100-MOC, 2015 WL 510104, at *4 (W.D.N.C. Feb. 6, 2015) ("Both elements [of the claim]…relate to the defendant's purpose of using the process to achieve some end foreign and distinct from the end the process defendant used was designed to effect.").

Defendants argue that Plaintiffs' abuse of process claim should be dismissed because the alleged abusive acts were conducted within the regular conduct of the lawsuit for a legitimate purpose, and do not constitute a "willful act." Here, Plaintiffs have alleged that Defendants used

the Superior Court Action to stifle lawful competition, interfere with I-Minerals' business relationships, and permanently restrain Gallo from working in the high purity quartz industry in any capacity. (Amend. Compl. ¶ 61). Plaintiffs have further alleged that Defendants committed the following willful acts in the course of the litigation: (1) seeking a TRO and preliminary/permanent injunctions to permanently sever the business relationship between I-Minerals and Gallo and restraining Gallo from working competitively with Unimin in any capacity; (2) seeking expedited discovery from I-Minerals, including a specific demand for I-Minerals' highly confidential proprietary and trade secret information, despite having no intention of providing any reciprocal discovery to I-Minerals; and (3) using the Superior Court Action to attempt to leverage an agreement from Dr. Gallo tantamount to a lifetime non-compete agreement for work with quartz mining or processing. (Amended Compl. ¶¶ 47-52, 62-64). The court finds that such allegations are more than sufficient to plausibly allege willful acts whereby Defendants allegedly sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to a collateral matter. See Chidnese, 708 S.E.2d at 734-35.

### C. Conclusion

For the reasons stated herein, the court finds that the facts alleged in the Amended Complaint plausibly state grounds for relief for all claims asserted, and that dismissing this action at this time is inappropriate. The court therefore enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that "Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" (#12) is **DENIED without prejudice** subject to renewal in the form of a motion for summary judgment.

Signed: September 16, 2015

Max O. Cogburn Jr
United States District Judge